**SO ORDERED.**

**SIGNED this 10 day of May, 2011.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

OPINION DESIGNATED FOR PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JODY LYNN DALEBOUT and | ) | Case No. 10-41813 |
| AMY SUE DALEBOUT, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

### MEMORANDUM OPINION AND ORDER DENYING DEBTORS'
### OBJECTION TO CLAIM #22 OF WELLS FARGO FINANCIAL NATIONAL BANK

This matter is before the Court on Debtors' Objection to Claim #22 of Wells Fargo Financial National Bank.[1] The parties have stipulated to the facts and fully briefed the matter, so the Court is ready to rule. This matter is a core proceeding over which the Court has jurisdiction.[2]

---

[1] Doc. 45.

[2] 28 U.S.C. § 157(b)(2)(B).

For the reasons set forth below, the Court overrules Debtors' objection to Wells Fargo Financial National Bank's claim, and holds that as between Debtors and Wells Fargo, the claim of Wells Fargo must be treated as a secured claim.

I.   **FINDINGS OF FACT**

The parties have stipulated to all facts they contend are relevant in this case,[3] and the Court adopts those stipulations. On or about April 10, 2006, Debtor Jody Lynn Dalebout ("Dalebout") entered into a Charge Slip contract with Wells Fargo Financial National Bank ("Wells Fargo") for the financing of the purchase and installation of six windows from American Exteriors, LLC. Contemporaneously with the creation of this contract, Dalebout completed and signed a Home Projects Visa Credit Card Account Application ("credit application"). The signature paragraph on the credit application stated that "you give us and we will retain a purchase-money security interest in the goods purchased under this Agreement."

The Charge Slip, entitled "SECURITY INTEREST," states that "you give us a purchase money security interest in any goods, described in this charge slip. We will not claim a security interest or other lien (except judgment lien) in your principal dwelling. You agree that any property described in this charge slip will remain personal property and will not become a fixture even if attached to real property."

The terms for the Home Project Visa Credit Card contain general terms, including:

**Security Interest**:   To the extent permitted by applicable law, you hereby grant to us and we are retaining a money security interest under the Uniform Commercial Code in the merchandise purchased on your account . . . . If you do not make a

---

[3]Doc. 63.

minimum payment due on your account by the date on which it was due, we may repossess any merchandise that has not been paid in full.[4]

Dalebout used the Home Projects Visa credit card from Wells Fargo to pay for the six windows.

The windows were installed at Debtor's residence at 2216 Lawrence Road, Manhattan, Kansas. Dalebout was the owner of the residence at all relevant times. The windows were installed as replacement windows for the windows originally installed in Dalebout's home. Although the parties' stipulated facts do not clearly address whether Dalebout was married at the time the windows were purchased, it does appear that he was married to co-Debtor Amy Dalebout by the time the windows were installed in the residence.

Debtors filed their Chapter 13 bankruptcy petition on October 6, 2010. Debtors listed Wells Fargo as an unsecured creditor in their bankruptcy schedules. Debtors' Chapter 13 plan did not identify Wells Fargo as a secured creditor or provide for payment of Wells Fargo's claim as a secured claim. Wells Fargo has not filed an objection to that plan.

Wells Fargo filed an initial proof of claim,[5] claiming it was owed a secured debt of $6,426.36. Debtors objected to this proof of claim on the basis that because the windows were installed in their home, they had become fixtures. Debtors contended that because Wells Fargo did not have a mortgage on their property, the debt secured by the fixtures to the real estate was unsecured.

Wells Fargo withdrew their initial proof of claim, and filed an amended claim,[6] which attached the credit application and the Charge Slip as evidence of its secured claim. Debtors

---

[4]*Id*. at ¶ 13.

[5]Proof of Claim No. 3.

[6]Proof of Claim No. 22.

objected to this proof of claim on the basis that (1) Wells Fargo "claims a secured interest for 'Items purchased from American Exteriors LLC' a non-descriptive form of collateral;" and (2) Wells Fargo "has no security agreement, no UCC-1 Financing Statement and no mortgage or other lien document attached to [its] claim."[7]  Wells Fargo responded to this objection by claiming that it had a security interest in the windows, as evidenced by the credit application, the Charge Slip, and the Home Projects Visa credit card statement attached to its proof of claim.

Wells Fargo does not claim any security interest in Debtors' real property and readily admits that it did not seek to protect its interest in the windows through either a fixture filing or a mortgage on Debtors' homestead.  Instead, Wells Fargo contends that it maintains its security interest in the windows as consumer goods under the Kansas Uniform Commercial Code, § 84-9-102(a)(23), and that it perfected its interest upon attachment under § 84-9-309(1).

Additional facts will be discussed below, when necessary.

## II. CONCLUSIONS OF LAW

The issue before the Court is whether Wells Fargo has a security interest in the windows Dalebout purchased using the Home Projects Visa credit card issued by Wells Fargo.  The main question in resolving that issue is whether the windows are the personal property of Debtors, or whether they have become fixtures that are incorporated into Debtors' real property.  Wells Fargo admits that it does not have a mortgage, or claim any other security interest in Debtors' real property, so if the windows have become fixtures, Wells Fargo's claim is unsecured.

---

[7] Objection to Claim #22 of Wells Fargo Financial National Bank (Doc. 45).

4

Case 10-41813    Doc# 71    Filed 05/10/11    Page 4 of 13

This issue is governed by applicable state law, and thus the Court turns to the law of the state where the property is located, Kansas, to resolve this issue.[8] As noted in *In re Farmland Industries, Inc.*, "for tax purposes, the Kansas legislature defines 'real property' as including not only the land itself, but all buildings, fixtures and improvements."[9] Personal property is defined "as every tangible thing which is the subject of ownership, not forming part or parcel of real property."[10]

Kansas courts have imposed a three-part test for determining if personal property has become a fixture, and thus part of the real estate. The three parts of the test are: (1) annexation to the realty (how firmly the items are attached and how easily they can be removed); (2) the intent of the parties (whether they intended the item to be permanently affixed to the real estate); and (3) how operation of the goods is related to the use of the realty (adaptability).[11] All three requirements must be met before property will be deemed to be a fixture under Kansas law.[12] In other words, "before personal property can become a fixture by actual physical annexation, the intention of the parties and the uses for which the personal property is to be put must all combine to change its nature from that of the chattel to that of the fixture."[13]

---

[8] *See Butner v. United States*, 440 U.S. 48, 54-55 (1979) (holding that in a bankruptcy proceeding, state law governs the rights of the parties with regard to interests in property).

[9] 298 B.R. 382, 387 (Bankr. W.D. Mo. 2003) (referring to K.S.A. 79-102).

[10] *Id*. *See also* K.S.A. 84-9-102(40), which defines "fixtures" as "goods that have become so related to particular real property that an interest in them arises under real property law."

[11] *In re Sand & Sage Farm & Ranch, Inc.*, 266 B.R. 507, 511 (Bankr. D. Kan. 2001) (citing *Peoples State Bank v. Clayton*, 2 Kan. App.2d 438, 439 (1978)).

[12] *See Atchison, T. & S. F. R. Co. v. Morgan*, 21 P. 809, 812 (Kan. 1889); *In re Farmland Indus. Inc.*, 298 B.R. at 388.

[13] *In re Farmland Industries*, 298 B.R. at 388 (quoting *Atchison, T. & S. F. R. Co.*, 42 Kan. 23 (1889)).

The burden of proving that an item remains personal property lies with the party claiming the item is, in fact, personal property.[14] Thus, Wells Fargo has the burden of showing that the window are personal property by establishing that at least one of the three prongs of the above test are not met under the relevant facts.

Wells Fargo claims that the second prong of this test—the intent of the parties—establishes that the windows did not become fixtures but, instead, remained personal property. According to Wells Fargo, the parties' shared intent was for the windows to remain personal property, and that this Court should enforce that expressed intent. Alternatively, Debtors claim that all three parts of the test have been met, and the windows are now a fixture. As to the second part of the test, Debtors essentially argue that although they did agree that the windows would not become a fixture, that the Court cannot enforce that agreement because the parties cannot contractually agree to override the definition of a fixture.

Although at first blush it seems that windows in a home would typically be considered fixtures, there is precedent for the holding that parties can agree to treat property, which would otherwise qualify as fixtures, as personal property. For example, this issue was recently decided by a bankruptcy court in Arkansas, in *In re Williams*,[15] which applied identical contractual language from the same creditor involved here in deciding whether a guttering system attached to debtor's

---

[14] *Stalcup v. Detrich*, 27 Kan. App. 2d 880, 886-87 (2000) (holding that a metal building attached by metal bolts to a concrete slab, with steel girders connected to each bolt, and sheeting attached to the steel girders, was personal property because (a) it could be removed although "it would take some effort" and removal would not cause damage to the real estate, (b) it was not particularly adapted to the farmland on which it sat, and (c) the owners' intention at the time of annexation for it to remain personal property was borne out by their provisions that it be separately taxed and that the taxes be paid by a distinct party).

[15] *In re Williams*, 381 B.R. 742 (Bankr. W.D. Ark. 2008). *See also* 35A Am. Jur. 2d Fixtures § 19 (stating that "[t]he characterization put upon articles as fixtures or nonfixtures by parties to a purchase contract should be upheld where the rights of third parties are not adversely affected, no statute suggests a contrary result, and the articles are not so completely merged with the realty as to prevent removal of the article without material injury to the realty.")

6

house should be considered a fixture or personal property. Wells Fargo claimed a security interest in the guttering system after using the same financing application and charge slip forms that were signed by Dalebout in this case. Williams claimed the guttering system had become a fixture in which Wells Fargo had no security interest.

The court examined numerous cases and secondary authorities that addressed the issue of whether the parties' intent, as evidenced by a contractual agreement, can transform what would ordinarily be considered a fixture into personal property. It concluded that the intent of the parties should control. The court held that as between the debtor and this particular creditor, their shared agreement that the gutters should remain household goods rather than fixtures was binding.

The court did express two caveats to this holding. First, it noted that the agreement is not binding on third parties without knowledge of the agreement. Second, it held that the intent of the parties may be overridden if removal of the items in question would cause extensive damage to the realty.[16]

Other courts have similarly held that parties to a purchase agreement can agree to treat property as personal property rather than as fixtures. For example, in *In re Hinson*,[17] the Chapter 13 trustee sought to avoid a creditor's security interest in windows and gutters by exercising his powers as a hypothetical lien creditor. As in this case, the creditor and the debtor had agreed that the windows and gutters would be considered personal property rather than fixtures. Although the court recognized that the agreement between the parties would be binding in an action between only those

---

[16]*Id*. at 745-46.

[17]77 B.R. 34 (Bankr. M.D. N.C. 1987).

7

two parties,[18] it nevertheless granted the trustee's avoidance action because he was a third party without notice of the agreement to treat the property otherwise.[19] Thus, the legal conclusion in *Hinson* is consistent with *In re Williams,* albeit under different facts.

A similar result was reached in *Hoffman Management Corp. v. S.L.C. of North America, Inc.*,[20] where the court held that an installed telephone system was properly considered personal property and not a fixture, based, in part, on the fact that the parties had expressly agreed to that treatment of the property. The court found that the intent of the parties was one of the critical determinations in deciding whether property should be considered a fixture, and that the parties clearly intended the system to retain its personal property character.

Although not precisely on point, the Kansas Supreme Court has addressed the ability of parties to affect, by agreement, the status of property as a fixture. In *Rowand v. Anderson*,[21] the plaintiff had erected a fence on his neighbor's land, with the understanding between those two parties that the fence would not become a fixture to the neighbor's land and could be removed at will by the plaintiff. The neighbor subsequently sold the land to the defendants, who did not have knowledge of the agreement regarding the fence located on their newly acquired property. Defendants removed the fence from their property, and the plaintiff filed suit claiming the fence remained his personal property.

The court held that

---

[18]*Id*. at 36.

[19]*Id*. (holding that "[w]hen third party rights are involved, the apparent intent to an outsider are determinative.").

[20]800 S.W.2d 755 (Mo. App. W.D. 1990).

[21]33 Kan. 264 (1885).

8

> [w]hile the legal effect of attaching a permanent improvement, like a fence, to the land of another may be controlled by an agreement as between themselves and those who have knowledge of such agreement, yet we think the weight of authority is such that an annexation to the land becomes a fixture which cannot be held or removed, as against a subsequent vendee who had no notice of the license, or agreement under which it was annexed to the land.[22]

From *Rowand*, it appears that the Kansas courts recognize the fact that, when determining whether property should be considered a fixture, "[t]he agreement of the parties may, to a certain extent, supersede the general rule of law."[23]

Kansas courts have consistently held that one of the requirements to convert personal property to a fixture is the intent of the parties.[24] When the parties unequivocally express their intent that they will treat property as personal property rather than as a fixture, it is consistent with Kansas law requiring courts to uphold the parties' contract. To hold otherwise would eliminate the second prong of the fixtures test. Although the parties' agreement may not be binding on a third party without knowledge of the agreement, such as a bankruptcy trustee seeking to avoid a lien for the benefit of the bankruptcy estate, or when removal of the property would cause substantial damage to the real estate, a party should not be able to get the benefit of the bargain by agreeing to treat property in one manner and then changing that position at a later date when it inures to his advantage to change his mind.[25]

---

[22] *Id.* at 268.

[23] *Id.* at 267.

[24] A similar test involving the intent of the parties was also applied in each of the cases cited above.

[25] Although the Court certainly does not know this to be true in this case, it can imagine that a creditor could offer goods and services at a lesser price if it did not have to jump over the perfection hurdles required of a fixture filer. Accordingly, the buyer should not be able to get the benefit of that potential lower price, but then be able to reject a portion of the contract when he can gain an advantage by doing so, and when it is too late for the creditor to protect itself.

9

Therefore, the Court adopts the holding of *In re Williams*, and holds that, with the exceptions set forth above, as between the parties to a purchase agreement, an agreement that property will be treated as personal property rather than a fixture is binding. Having reached this holding, the Court now turns to facts of this case to determine whether the windows in this case should be considered a fixture.

Wells Fargo cites to the Charge Slip, which was signed by Dalebout. It specifically states "You agree that any property described in this charge slip will remain personal property and will not become a fixture even if attached to real property." According to Wells Fargo, the Charge Slip conclusively establishes that the parties agreed that the windows would not become fixtures. Wells Fargo also claims that it relied on this agreement by not taking a mortgage on Dalebout's residence or otherwise attempting to perfect a security interest in Dalebout's real estate or fixtures. Debtors do not provide any evidence to refute Wells Fargo's arguments regarding intent.

The only remaining issue, then, is whether the removal of the windows would substantially damage the real estate. The parties' stipulation, which they agreed constituted all the evidence required for the Court to decide this case, is completely silent on any claim by Debtors that removal of the windows would cause damage to the real property.

Notwithstanding that there are no facts upon which this Court could find damage would be caused by the windows' removal, Wells Fargo generally noted in its brief that because these were replacement windows, no substantial damage to the real estate would occur with their removal. It argues that replacement windows are, by their very nature, removable and replaceable, and that the windows that were originally built with the house have already been removed and replaced with the windows in question, presumably without causing substantial damage to the house. It then argues

10

that the current windows could similarly be removed without causing any additional damage to the house.

Debtors' brief alludes to the possibility of damages from removal of the windows, but provides no real explanation as to how the real estate would be substantially damaged by the removal of the windows. And, most importantly, there is no stipulated fact that damage is likely to be caused by the removal of the windows.[26]

Debtors raise two other arguments in support of their claim that Wells Fargo is not a secured creditor. First, Debtors argue that they were married at the time the windows were installed, giving Amy Dalebout certain rights in the real estate under Kansas law—including a prohibition against alienation without her consent. Debtors are correct that K.S.A. 60-2301 prohibits the alienation of an interest in a homestead without the joint consent of the husband and wife. However, that prohibition against alienation is only applicable if the windows are considered fixtures, and thus part of the homestead property. Because the Court has held that the windows remained personalty, the prohibition against alienation of an interest in the homestead without joint consent of both spouses is inapplicable. There is no requirement for joint consent to the alienation of personal property.

Second, Debtors argue that the financing agreement was entered into between Visa Home Projects and/or American Interiors, and not Wells Fargo. This argument is simply not supported by the stipulated evidence in this case. The Charge Slip, which contains the security agreement language and a promise to pay, and the Home Projects Visa Credit Card Account Agreement, both

---

[26]Clearly a house without windows may incur damage from the weather, but it is not the removal of the windows that would cause the damage to the property. The damage would be caused by not taking proper steps to replace the windows or to otherwise protect the real estate from the elements.

Case 10-41813    Doc# 71    Filed 05/10/11    Page 11 of 13

clearly state that the financing agreement is between Jody Dalebout and Wells Fargo Financial National Bank. The Home Projects Visa Credit Card Account Application does not explicitly state that Dalebout was entering into an agreement with Wells Fargo, but it does specifically reference the account agreement. That agreement clearly states that Wells Fargo is the lender. Dalebout's signature on the application attests to the fact that he agreed to the terms of the account agreement, including the identity of the creditor.[27]

## III. CONCLUSION

The Court finds that—as between Debtors and Wells Fargo—the windows in question are not considered fixtures but remained the personal property of Debtors, subject to Wells Fargo's purchase money security interest. As such, the Court finds that Wells Fargo does have a security interest in the replacement windows installed in Debtors' home, and its secured proof of claim was properly filed.

The Court again wishes to stress that its holding today is limited to the facts of the case before it. The Court is not generally holding that replacement windows can never become fixtures or do not typically become part of the real estate to which they are attached. Rather, the basis for this decision is the finding that the parties clearly agreed to treat the windows as personal property, an agreement on which Wells Fargo relied when determining what steps were necessary to protect its security interest in the property. Although the agreement between the parties is not binding on any third party without notice of the agreement, it is binding as between the only two parties to this particular dispute, Debtors and Wells Fargo.

---

[27] The Court also notes that Debtors may also be claiming that the security agreement does not properly identify the collateral to the security agreement. The Court finds that the Charge Slip properly identifies the property in question.

12

**IT IS, THEREFORE, BY THE COURT ORDERED** that Debtors' Objection to Claim #22 of Wells Fargo Financial National Bank[28] is overruled.[29]

###

---

[28] Doc. 45.

[29] Because the plan does not propose to pay this secured claim, this decision does not defeat confirmation of the plan on file, which is set for hearing on May 24, 2011 at 1:30 p.m. The Court assumes that if the plan is not amended to provide for payment, however, that this creditor might seek relief from the stay to allow it to reclaim the collateral.